NEELEMAN LAW GROUP
1403 8th Street
Marysville, WA 98270
Telephone 425-212-4800
Fax 425-212-4802

The Honorable Marc Barreca

# IN THE UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON

In re:

HWC BURBS BURGERS, LLC,

Debtor-in-Possession

Case No.: 23-11919

**MOTION FOR ORDER AUTHORIZING PAYMENT OF PRE-PETITION WAGES and INTERIM USE OF CASH COLLATERAL**

Comes now the Debtor-In-Possession, HWC Burbs Burgers, LLC (herein, "Burbs") by and through its attorneys of record Neeleman Law Group, P.C. and moves the Court, pursuant to § § 363(c) and (e) of the Bankruptcy Code, Fed. R. Bankr. P 4001(b) and (d) and Local Bankruptcy Rules 4001-3 and 9013-1 (d)(2)(E), for entry of an Order granting the following relief: (i) emergency authorization, on an interim basis, authorizing the Debtor's use of Cash Collateral for the operational expenses as set forth in Exhibit B to the Declaration of Joshua Henderson (herein "Declaration"), pending a final hearing to be held not less than 14 days after service of this motion, (ii) for an order authorizing payment of the Debtor's October 23, 2023 payroll for hours worked October 4, 2023 through October 18, 2023 which includes hours worked prior to the petition (iii) granting to Secured Creditor (defined below) post-petition replacement liens as and for adequate protection and (iv) setting a final hearing on the foregoing

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 ‖ F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 1 of 12

matters. The emergency motion is based upon the files and records herein, and the concurrently filed Declaration of Joshua Henderson in support of the motion.

## I. JURISDICTION AND VENUE

This Court has jurisdiction to consider this Emergency Motion under 29 U.S.C. § § 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtor consents to the entry of a final order by the court in connection with this motion to the extent it is later determined that the Court, absent consent of the parties cannot enter final orders or judgments consistent with Article III of the United States Constitution. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

## II. HISTORY OF THE DEBTOR

A. <u>The Debtor and its Operations.</u>

1. The Company filed a petition under Chapter 11, Subchapter V on October 9, 2023 (herein the "Petition Date"). The Debtor is operating its business and managing its affairs as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108.

2. Burbs opened its first location at Pioneer Square in 2020, in restaurant space previously occupied by Quality Athletics at 121 King Street Seattle, WA.

3. The initial location was followed by the opening of a food truck operation at 2010 E. Roanoke Street, Seattle WA 98112 which opened in 2020, a Ballard location at 5101 14th Ave., NW Seattle WA 98107 opened in 2022 and a Georgetown location at 5925 Airport Way South, also opened in 2022.

4. In June 2023 Burbs opened its Bellevue location located at 400 Bellevue Way, NE, Bellevue WA,

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 ‖ F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 2 of 12

5. A food truck operation in Burien will be coming online soon.

6. Burbs serves a menu of simple, unique menu of sandwiches items including "Smash Burgers," Chicken Sandwiches, gourmet Hot Dogs and various side dishes.

7. The Burbs concept originated when owner Josh Henderson sought to downsize and simplify his large operation to focus the simple Burb's concept.

8. The COVID pandemic had a severe impact on revenue at the Burb's original location. In an attempt to rebound from the impact of COVID Burb's sought to establish additional locations to grow its way to profitability. Between 2021 and 2023, during this period, Burb's obtained financing at less than favorable interest rates and fell behind on Department of Revenue obligations. Facing mounting collection pressure from creditors, the debtor filed for protection under Chapter 11, Subchapter V, in order to remain in business.

### III. EMPLOYEE WAGES

9. As set forth above and in the Declaration, the Debtor disburses payroll bi-weekly, with the next payroll set to occur on October 23, 2023, which will include for pre-petition hours worked from October 4, 2023, through October 09, 2023.

10. Attached to the Declaration is a list of the employees to be paid, along with estimated payroll totals. As evidenced in the Declaration, none of the proposed payments to each individual exceeds $15,150.00. The pre-petition wage claims are based on compensation earned within 180 days of the petition date under the statutory cap, entitling them to priority status pursuant to 11 U.S.C. §507(a)(4). Pursuant to §1129(a)(9), the wage claims would normally be entitled to priority under any Chapter 11 plan, therefore Debtor does not believe payment at this time would prejudice other creditors. Payment of the prepetition wages is also

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 ‖ F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 3 of 12

necessary to preserve the Debtor's business as a going concern.

11. As part of the foregoing relief, Debtor also seeks authorization to pay all federal and state withholding and payroll-related taxes resulting from this pre-petition pay period including, but not limited to, all withholding taxes, Social Security taxes, and Medicare taxes, as well as all other withholdings such as life insurance and other employee deductions, if any. The failure to make such payments may subject the Debtor to federal or state liability. See *e.g. Hawley v. United States,* 1997 Bankr. LEXIS 1756 (Bankr. E.D. Wash. 1997) ("reckless disregard" for the duty to pay taxes was sufficient to impose liability on the responsible individual); *Beiger v. City of Farrell (In re Sharon Steel Corp.),* 41 F.3d Cir. 1994) (delineating state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld taxes); *Ducharmes & Co. v. Michigan (In re DuCharmes),* 852 F.2d 194 (6th Cir. 1988*)* (noting the special liabilities for failure to pay trust fund taxes). Such funds are not property of the Debtor's estate and thus are not subject to normal bankruptcy prohibitions against payment. See *Beiger v. IRS,* 496 U.S. 53 (1990) (characterizing debtor's payment of employee withholding for federal income and FICA taxes as not a preferential transfer because withholding held in trust for taxing authority is not part of debtor's estate).

### IV. CASH COLLATERAL

12. In addition to an order authorizing its October 23, 2023, payroll, the Debtor seeks an order authorizing the interim use of cash collateral for payment of all other ongoing operating expenses of the Debtor including future payroll expenses.

13. As set forth in the Declaration and attached exhibits, the Debtor needs to use

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 || F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 4 of 12

funds on hand to operate the business. Attached to the Declaration is an anticipated income and expense budget (herein "Budget"), from the petition date through the next 16 weeks. As supported by the budget, the Debtor seeks authorization for the use of Cash Collateral for the period from the petition date through February 10, 2024, or until the effective date of the Plan, whichever is earlier. In exchange for the use of cash collateral, if appropriate, Debtor moves the Court to grant replacement liens on new income, to ensure the Secured Creditors are adequately protected.

A.. The Secured Claims

*Financing Statements*

14. Based on a search of the Washington State Department of Licensing, performed on October 12, 2023, the Debtor has identified 6 filer of UCC-1 financing statements, including:

a) Square Financial Services, Inc. (Filed 12/22/21 – 2021-356-9224-6)

b) Kalamata Group, LLC (Filed 1/21/22 – 2022-021-8672-2)

c) CloudFund, LLC (Filed 1/25/22 – 2022-025-9512-8)

d) Advantage Platform Services, Inc (Filed 1/26/22 – 2022-026-9683-2)

e) Lien Solutions/unknown secured party (Filed 2/14/22 – 2022-045-5855-8)

f) WebBank (Filed 8/23/23 – 2023-235-4928-4)

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 || F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 5 of 12

*Security Interest*

15. Based on the above and as set forth in the Declaration of Joshua Henderson, creditors with an interest in Debtor's cash collateral (herein "Secured Creditors") are listed below. The loan documentation relating to referenced secured claims are attached as Exhibits C.1 through C.15 to the Declaration.

|   | Date | Creditor Name | Description of Collateral | Creditor's Priority Rank in Collateral | Value of Collateral | Amount of Outstanding Balance |
|---|---|---|---|---|---|---|
| 1 | 12/22/21 | Square Financial Services, Inc. | Accounts receivables, etc. and proceeds | First Position | $149,000.00 | $200,000.00 |
| 2 | 1/21/22 | Kalamata Group, LLC | Accounts receivables, etc and proceeds | Second Position | $35,019.30 | $50,705.00 |
| 3 | 1/23/22 | CloudFund, LLC | Account receivables, etc and proceeds | Third Position | $0.00 | $64,000.00 |
| 4 | 1/26/22 | Advantage Platform Services, Inc. | Account receivables, etc and proceeds | Fourth Position | $0.00 | $188,497.12 |
| 5 | 2/14/22 | Lien Solutions/Unknown Secured Party | Account receivables, etc. and proceeds | Fifth Position | $0.00 | Unknown |
| 6 | 8/23/23 | WebBank | Account receivables, etc. and proceeds | Sixth Position | $0.00 | Unknown |

16. The Declaration further sets forth that, as of the petition date, Debtor's deposit accounts with a balance of approximately zero and accounts receivable of approximately $10,519.30. Accordingly, on the date of the petition, the Debtor's cash collateral was estimated to be valued at $10,519.30. The debtor had non-vehicle equipment and inventory in the amount of $173,500.00.

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 || F 425.212.4802

Neeleman Law Group

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 6 of 12

## V. CAUSE EXISTS TO HEAR THE MOTION ON AN EMERGENCY BASIS

17. Cause exists to hear this motion on an emergency basis as Debtor requires the immediate use of cash proceeds from working capital, collection of customer sales and accounts receivable ("Cash Collateral") to fund payroll and pay related payroll expenses and to pay other fundamental operating expenses to otherwise minimize disruption to and avoid termination of its operations, and thereby avoid immediate and irreparable harm to its business pending a final hearing ("Final Hearing").

## VI. THE DEBTOR'S CASH COLLATERAL PROPOSAL

18. The debtor proposed to use the cash collateral in accordance with the Budget and pursuant to the terms and conditions set forth below:

19. <u>Budget</u>. The Debtor seeks authorization to make the expenditures provided in the Budget, and if necessary, to exceed the amounts set forth in the Budget by as much as 15% more than the total. Any expenditures more than this authorization will require written approval of the Secured Creditor or further order of the Court after appropriate notice. Savings in any week may be carried over and used by the debtors in subsequent weeks (i.e., to account for changes in the timing of expenditures by the respective Debtor). After the expiration of the term of budget, the Debtor will be able to obtain use of any cash collateral of the Secured Creditor by filing and serving an amended budget; if no objection to the terms of such budget is filed within ten (10) day after the service of such budget, the budget will be deemed to have been approved. Substantially all the expenses listed on the Budget will be paid with funds held in the operating account of the Debtor.

20. <u>Replacement Lien</u>. As adequate protection and for the Debtor's use of the cash

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 || F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 7 of 12

collateral, the Secured Creditor will be granted replacement liens in the debtor's post-petition cash, accounts receivables, and the proceeds of each of the foregoing, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by the Secured Creditor as of the Petition Date, limited to the amount of any cash collateral of the Secured Creditor as of the petition date, to the extent that any cash collateral of the Secured Creditor is used by the Debtor.

21. <u>Reservation of Rights</u>. The debtor and all other parties in interest will reserve any and all rights that they may have to object to the claims of the Secured Creditors and to object to the validity, priority and extend of Secured Creditor's liens, if any, encumbering the Debtor's assets.

22. <u>Financial Reporting</u>. The debtor will provide to the Secured Creditor all interim statements and operating reports required to be submitted to the Office of the United States Trustee.

23. <u>Final Hearing on this Motion</u>. The debtor reserves the right to seek, at the final hearing on this Motion, use of cash collateral different from that set forth herein.

**VII. THE USE OF CASH COLLATERAL WILL BENEFIT THE ESTATE**

24. The Secured creditor's liens will not be diminished if the Debtor is permitted to use cash collateral as is requested in this Motion. To the contrary, as is explained above, the Debtor will be employing the cash collateral to assist in the continued operations of the business.

25. The use of cash collateral will benefit all creditors because the cash will be used to generate income from the sale of Debtor's products using the assets securing the secured claims. Based on an analysis of the information provided by the Debtor, the Court should

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 || F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 8 of 12

approve the Motion and the Budget, and allow the use of cash collateral up to and including the date of the Final Hearing.

**VIII. THE SECURED CREDITORS ARE ADEQUATELY PROTECTED**

26. To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. Pursuant to Section 363(c) (2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984); see also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir. 1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

27. Pursuant to the Supreme Court case of United Savings Association v Timbers of Inwood Forest Associates, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Section 363 (c) (1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. See also McCombs, id. At 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the claim or the value of the collateral." McCombs, Id. At 266.

28. The preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. In re Triplett, 87 B.R. 25 (Bankr. W.D. Tex. 1988). See also In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982). In Stein, the Court found that, as a general rule, a Debtor may use cash collateral were. such use would enhance or preserve the value of the collateral and allowed the Debtor therein to use cash collateral even though the secured party had no equity cushion for protection. The Stein

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 || F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 9 of 12

Court determined that the use of cash collateral was necessary to the continued operations of the Debtor, and that the creditor's secured position could only be enhanced by the continued operations of the debtor's business. See also *In re McCombs*, supra, (Court determined that the debtor's use of cash collateral for needed repairs, renovations and operating expenses eliminated the risk of diminution in the creditor's interest in the cash collateral and such use would more likely increase cash collateral.

29. Here, the Debtor is seeking only to use cash collateral to pay ongoing expenses of the Debtor such that Debtor can continue to operate and generate revenue for creditors.

30. The Debtor has proposed replacement liens against property acquired post-petition to insure that Secured Creditor's liens will not be diminished if the Debtor is permitted to use cash collateral as is requested in this Motion. The requested relief is therefore appropriate because these efforts can only serve to benefit all creditors of the bankruptcy estate.

### IX. FINAL HEARING

31. The Debtor requests the Court schedule a final hearing on this Motion as soon as possible in accordance with the requirements of the Federal Rules of Bankruptcy Procedure. Rule 4001 of the Federal Rules of Bankruptcy Procedure provides that the Court may commence a final hearing on this Motion no earlier than fourteen (14) days after service of the Motion. The Debtor needs to obtain final approval of the use of cash collateral to assure the Debtor's operations can continue. A final hearing on this Motion should be held as soon as possible after the expiration of the fourteen (14) day period provided for by Rule 4001 of the Federal Rules of Bankruptcy Procedure.

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 || F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 10 of 12

## X.  NOTICE TO BE DEEMED ADEQUATE

32. As of the filing of this Motion, no Trustee, examiner or Committee has been appointed in the Debtor's Chapter 11 case. In accordance with the provisions of Bankruptcy

33. Rule 4001(b)(1), notice of this Motion will be given pursuant to the Court's instructions and a copy of this Motion has been served by e-mail and or overnight mail to the Office of the United States Trustee, to the Secured Creditors, their counsel of record, and to all the Debtor's twenty largest general unsecured creditors.

34. Because of the exigencies of the Debtor's case and the irreparable harm to the Debtor, its Chapter 11 estate, and all parties in interest that would ensue if the relief requested herein is not granted, the debtor submits that no further notice need be given.

WHEREFORE, the Debtor respectfully requests that the Court approve, on an interim basis and pending a final hearing, (i) the Debtor's use of Cash Collateral for the operational expenses as set forth in the Budget, (ii) the payment of the Debtor's October 23, 2023 payroll on October 23, 2023 for hours worked from October 4, 2023 through October 18, 2023  (iii) replacement liens as and for adequate protection of the Secured Creditors and set a final hearing on the foregoing matters.

Dated this 18th day of October 2023

/s/ Thomas D. Neeleman
Thomas D. Neeleman
Neeleman Law Group, P.C.
Attorney for HWC Burbs Burgers, LLC

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 ‖ F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 11 of 12

# CERTIFICATION

I, Thomas D. Neeleman of Neeleman Law Group, P.C., Attorneys for Debtor, certify that the proposed order authorizing use of cash collateral and granting adequate protection does not include any provision listed under Paragraph A of the Guidelines for Cash Collateral and Financing Stipulations.

/s/ Thomas D. Neeleman
Thomas D. Neeleman, WSBA #33980

Motion Authorizing Temporary Use of Cash Collateral

1403 8th Street
Marysville, WA 98270
P 425.212.4800 ‖ F 425.212.4802

**Neeleman Law Group**

Case 23-11919-MLB    Doc 12    Filed 10/18/23    Ent. 10/18/23 22:49:17    Pg. 12 of 12