NEELEMAN LAW GROUP, P.C.
1403 8th Street
Marysville, WA 98270
Telephone: (425) 212-4800
Facsimile: (425) 212-4802

The Honorable Marc Barreca
Location: Seattle

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

In re:                           :    Case No.: 23-11919

                                :

HWC BURB'S BURGERS, LLC      :    DEBTOR'S PLAN OF

                                :    REORGANIZATION

            Debtor(s).          :

_____ :

## **ARTICLE I**

## **BACKGROUND**

### **1.01.** **Description and History of the Debtor's Business**

HWC Burb's Burgers, LLC dba Burb's Burgers (herein the "Debtor") filed a petition under Chapter 11, Subchapter V on October 9, 2023 (herein the "Petition Date"). The Debtor is currently operating its business and managing its affairs as a debtor-in-possession.

### **a.** **Operation**

The Debtor serves a menu of simple, unique menu of sandwiches items including "Smash Burgers," chicken sandwiches, gourmet hot dogs and various side dishes. The Burb's concept originated when principal Josh Henderson sought to downsize and simplify his larger, non-related operations to focus on the simple Burb's concept. The Debtor was organized as a Washington Limited Liability Company by Josh Henderson on February 26, 2020, and has been in continuous operation since that time.

**b. <u>Locations</u>**

The Debtor opened its first location at Pioneer Square at 121 King Street Seattle, WA, in 2020, in restaurant space previously occupied by Quality Athletics, LLC an entity owned and previously operated by principal Josh Henderson which is no longer in business. The Debtor currently has possession and utilizes equipment at the Pioneer Square location, which remained in the Pioneer Square location. Quality Athletics, LLC pledged as security interest, pursuant to a UCC-1 filing filed January 15, 2020, in the equipment securing a Quality Athletics, LLC loan with Heritage Bank which is subject to an SBA guarantee. The Debtor believes that the current fair market value of the equipment subject to the lien is approximately $15,000.00 .

The initial Burb's location was followed by the opening of a food trailer operation at 2010 E. Roanoke Street, Seattle WA 98112 which opened in 2020, a Ballard location at 5101 14th Ave., NW Seattle WA 98107 opened in 2022 and a Georgetown location at 5925 Airport Way South, also opened in 2022. In June 2023, Debtor opened its Bellevue location located at 400 Bellevue Way, NE, Bellevue WA. The Debtor is currently addressing permitting issues associated with a food trailer operation in Burien which the Debtor hopes to resolve by Spring, 2023

**1.02 <u>Insiders of the debtor</u>**

Insiders of the Debtor are:

    a.     Josh Henderson – Managing Member (100%)

**1.03. <u>Events Leading to Chapter 11 Filing</u>**

The COVID pandemic and associated operation restrictions severely impacted revenue at the Debtor's original location. To address the reduction in revenue, and in attempt to return to profitability, the Debtor opened the additional locations by acquiring equipment and locations of

restaurants that were unable to continue operations because of the downturn. Although the price the Debtor paid for the plant and equipment of these former operations was a fraction of the "going concern" value, the Debtor expenditures left the Debtor in need of operational cash.

To address its need for cash, between 2021 and 2023, the Debtor obtained financing at less than favorable interest rates and fell behind on its Department of Revenue obligations. Facing mounting collection pressure from creditors, including tax authorities, the debtor filed for protection under Chapter 11, Subchapter V, in order to remain in business.

**1.04**. **Management of the Debtor Before and During the Bankruptcy**

Josh Henderson, holder of a 100%-member interest in the Debtor, served as Managing Member of the Debtor prior to the petition date and will continue to serve in the same capacity for which she will be compensated pursuant to the terms set forth in Article V below.

**1.05** **Significant Events During the Bankruptcy Case**

The Debtor filed a *Motion for Order Authorizing Payment of Pre-Petition Wages and Expenses* on October 18, 2023 (Dkt. No. 12), which was granted without objection with the final Order entered on December 4, 2023 (Dkt. No. 46).

An application to employ Neeleman Law Group, P.C. to represent the Debtor in this proceeding was filed on November 15, 2023 (Dkt. No 34), and an order granting the application was signed on November 16, 2023 (Dkt. No. 37).

**1.06** **Projected Recovery of Avoidable Transfers**

The Debtor is not aware of any preferences or fraudulent conveyances which existed as of the Petition Date. Accordingly, the debtor does not intend to pursue any actions.

**1.07   Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets as of the petition date are listed in **Exhibit A.**

The Debtor has filed monthly operating reports during the pendency of this case. Information shown on the monthly reports includes the Debtor's income from all sources and details the Debtor's monthly expenses. Copies of the monthly reports are available online through the court's electronic filing system and/or may be viewed in the bankruptcy court clerk's office.

## ARTICLE II
### SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11, Subchapter V of the United States Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor in the manner and consistent with the terms contained herein.

This Plan provides for treatment of unclassified administrative claims, priority tax claims, one class of unsecured claims and one class of equity security holders.

Each creditor and equity security holder should refer to Articles III through V of this Plan for information regarding the precise treatment of its claim. Pursuant to 11 USC §1181(b) of the Code, unless the Court orders otherwise, a Disclosure Statement providing further detail as pertaining to background and treatment of claims treatment is **not** required and **will not** be filed and circulated in this case. Accordingly, creditors and equity security holder should rely on the contents of this Plan only in determining whether to accept or reject this Plan's treatment of your claim.

**YOUR RIGHTS MAY BE AFFECTED BY CONFIRMATION OF THIS PLAN. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY, IF YOU HAVE ONE. (IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.)**

## ARTICLE III

### CLASSIFICATION OF CLAIMS AND INTERESTS

**3**.01   <u>Class 1</u>   Secured claim of Heritage Bank, as holder of a UCC-1 security interest on equipment utilized by the Debtor at its Pioneer Square location.

**3.02**   <u>Class 2</u>   Secured claim of Advantage, as holder of UCC-1 secured interest.

**3.02**   <u>Class 3</u>   All general unsecured claims allowed under § 502 of the U.S. Bankruptcy Code.

**3.03**   <u>Class 3</u>   Equity Security Holder – Joshua Henderson

## ARTICLE IV

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

### AND PRIORITY TAX CLAIMS

**4.01   <u>Unclassified Claims</u>.**   Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

**4.02   <u>Administrative Expense Claims</u>.**   Each holder of an administrative expense claim allowed under 11 U.S.C §503 of the Code will be paid pursuant to the Plan treatment as provided in Article V below.  Notwithstanding, the treatment of an allowed administrative expense claim will be subject to the provisions of 11 U.S.C 1129(a)(9) in a Consensual Plan and 11 U.S.C. 1191(e) in a Cramdown Plan as defined in Article X herein.

**4.03** <u>**Priority Tax Claims**</u>. Each holder of a priority tax claim will be paid the amount of its allowed claim in full as provide in Article V below.

## ARTICLE V

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**5.01** The Debtor will begin making payments to the Disbursing Agent in advance of 60 days from the effective date as designated in Article XI below from the lump sum payment received of $375,000.00 from the sale of Debtor's assets. The Debtor will make monthly payments thereafter to the Disbursing Agent of $6,500.00 per month from installment payments received from the sale of Debtor's assets. Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 – Heritage Bank** | Impaired | With proceeds from the sale of Debtor's assets as referenced in Paragraph VIII below, Heritage Bank will be paid a lump sum cash payment in the amount of $15,000.00 on or before 60 days following the effective date of the Plan in exchange for the full release of the UCC-1 security interest in the Pioneer Square equipment. |
| **Class 2 – Advantage** | Impaired | With proceeds from the sale of Debtor's assets as referenced in Paragraph VIII below, Advantage will be paid a lump sum cash payment in the amount of $10,000.00 on or before 60 days following the effective date of the Plan in exchange for the full release of the UCC-1. |
| **Class 3 – General unsecured creditors** | Impaired | Each holder of an allowed general unsecured claim will be paid a pro rata share of $30,000.00 to be paid in equal monthly installments of $1000.00 per month beginning 90 days following the effective date of the plan. Payments will be made from installment payments received from the purchaser of Debtor's assets. |

| | | |
|---|---|---|
| | | If necessary, on or before October 15th 2028 allowed general unsecured claims will be paid a pro rata share of a lump sum payment in an amount sufficient so that the total amount paid to general unsecured claims, totals the liquidation amount referenced in Section 14.05 below. |
| **Class 4 – Equity Security Holders** | Impaired | Joshua Henderson holds a 100%-member interest in the Debtor which he will retain until payments provided for in the Plan are paid in full.  For her services as managing member of the Debtor, Mr. Henderson will receive compensation, in the form of monthly salary which will not exceed the amount set forth in Exhibit C until such time as the payments provided for in this plan are paid in full. |
| **Unclassified Claim of the Internal Revenue Service** | n/a | With proceeds from the sale of Debtor's assets as referenced in Article VIII below, the Debtor will pay a lump sum cash payment as necessary on or before 60 days following the effective date of the Plan to pay the allowed priority claim of the Internal Revenue Service and for the full release of any lien secured by the assets |
| **Unclassified Claim of the Washington State Department of Revenue** | n/a | With proceeds from the sale of Debtor's assets as referenced in Article V III below, the Debtor will pay a lump sum cash payment in the amount of $150,000.00 on or before 60 days following the effective date of the Plan in partial payment of the allowed priority claim of the Washington State Department of Revenue and for the full release of any lien secured by the assets.<br><br>The remainder of the unclassified priority claims of the Washington State Department of Revenue will be paid the by the Debtor in equal monthly installments of sum of $5,500.00 per month beginning 90 days after the effective date and continuing monthly until paid in full.   Interest will accrue at the rate and applicable terms determined under state law. |
| **Unclassified Claim of the Washington State Department of Employment Security** | n/a | With proceeds from the sale of Debtor's assets as referenced in Article VIII below, the Debtor will pay a lump sum cash payment as necessary on or before 60 days following the effective date of the Plan to pay the allowed priority claim of the Washington State Department of Employment Security for the full release of any lien secured by the assets. |

| Unclassified Claim of the Washington State Dept. of Labor and Industries | n/a | With proceeds from the sale of Debtor's assets as referenced in Article VIII below, the Debtor will pay a lump sum cash payment as necessary on or before 60 days following the effective date of the Plan to pay the allowed priority claim of the Washington State Department of Employment Security for the full release of any lien secured by the assets. |
|---|---|---|
| Unclassified Claim of Trustee Michael DeLeo | n/a | With proceeds from the sale of Debtor's assets as referenced in Article VIII below, the Debtor will pay the allowed fees of Michael Deleo, the Sub Chapter V Trustee, a lump sum cash payment on or before 60 days following the effective date of the Plan. |
| Unclassified Claim of Neeleman Law Group, P.C. | n/a | The allowed administrative claim of Neeleman Law Group, P.C. will be paid from funds currently held in trust, with the balance paid with a lump sum cash payment on or before 60 days following the effective date of the Plan, from all available funds after payment of the secured, priority and other unclassified claims as referenced herein. |

# **ARTICLE VI**

## **ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**6.01** **Disputed Claim**. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**6.02** **Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**6.03** <u>**Settlement of Disputed Claims**</u>. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**6.04** The deadline for filing administrative claims is 60 days after the effective date of the Plan

## ARTICLE VII

### PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor intends to assume, upon the terms set forth below the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan as provided in Article IX:

1. **Lease with Pioneer Square Development, LLC ("Pioneer Landlord").** The Debtor's liability on the lease arises from an Assignment and Assumption of Lease, effective December 16, 2022, attached hereto as Exhibit B, wherein the Debtor, with the Pioneer Landlord's consent, accepted an assignment of the lease and all obligations under the lease from Quality Athletics, LLC. The assumption did not release the original parties from obligations under the lease. The Debtor currently operates the Pioneer Square operation from the leased premises. Assumption of the lease is in the best interest of creditors in that the leasehold serves as the base of the operation and will serve as the same for the NewBurb's entity.

This Plan provides for the assumption of the lease by the Debtor of all rights under the lease. It further provides that on or before 60 days from the

effective date of this Plan, the Debtor will tender the sum of $75,000.00 to Pioneer Landlord, from proceeds received from the sale of Debtor's assets, in full and complete settlement of the amount necessary to cure any default under the lease. The Plan further provides that upon payment of the above referenced cure payment the Pioneer Landlord will consent to an assignment of the remaining term of the lease to NewBurb's and will fully release the Debtor from any and all obligations under the lease.

2. **Lease with LS2 Retail, LLC. ("Bellevue Landlord").** The Debtor's liability on the lease arises from a lease agreement dated November 30, 2022, by and between HWC Burb's Burgers, LLC and Bellevue Landlord. The Debtor currently operates its Bellevue operation from the leased premises at Lincoln Square and the operation is an integral party of the Debtor's operation. This Plan provides for the assumption of the lease by the Debtor of all rights under the lease. It further provides that on or before 60 days from the effective date of this Plan, the Debtor will tender to the Bellevue Landlord sufficient funds to cure any default under the lease from proceeds received from the sale of Debtor's assets. The Plan further provides that upon payment of the above referenced cure payment the Bellevue Landlord will consent to an assignment of the remaining term of the lease to NewBurb's and will fully release the Debtor from all obligations under the lease.

3. **Lincoln Square Merchants Association ("Lincoln Square Merchants")**. The Debtor's liability on this contract arises from its association with other merchants at Lincoln Square as referenced above. This Plan provides

for the assumption of the contract by the Debtor of all rights under the contract. It further provides that on or before 60 days from the effective date of this Plan, the Debtor will tender to the Lincoln Square Merchants sufficient funds to cure any default under the contract from proceeds received from the sale of Debtor's assets. The Plan further provides that upon payment of the above referenced cure payment Lincoln Square Merchants will consent to an assignment of the remaining term of the contract to NewBurb's and will fully release the Debtor from all obligations under the contract.

    4.    **Washington State Department of Transportation ("WashDot Landlord")** The Debtor's lease ground space for the operation of a food truck operation at the Montlake Temporary market. This Plan provides for the assumption of the contract by the Debtor of all rights under the lease. It further provides that on or before 60 days from the effective date of this Plan, the Debtor will tender to the WashDot sufficient funds to cure any default under the lease from proceeds received from the sale of Debtor's assets. The Plan further provides that upon payment of any necessary cure payment WashDot Landlord will consent to an assignment of the remaining term of the contract to NewBurb's and will fully release the Debtor from all obligations under the contract.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A proof of claim arising from the rejection of an executory contract or unexpired lease

under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THE PLAN

A new entity, tentatively NewBurbs, LLC (herein, "NewBurbs"), formed for the purpose of implementing the terms of this Plan, and owned by a non-related ownership group, the members of which are not yet specifically determined, although negotiations are ongoing, will purchase from the reorganized Debtor, all right, title and interest in all assets of the Debtor. The tentative terms of the purchase agreement will provide for a down payment of $375,000.00 to be paid to the Debtor on or before 60 days from the effective date of the plan and continuing installment payments in the amount of $6,500.00 per month for 60 months as evidenced by a Promissory Note (the "Note") between the Debtor and NewBurbs. Payment on the Note will be secured pursuant to the terms of a commercial security agreement in favor of the Debtor, in first position as to the assets sold. NewBurbs will operate as "Burb's Burgers" utilizing the name and other assets purchased from the Debtor. The Debtor will make payments pursuant to Article V of this Plan with payments received from NewBurbs on the Note.

In addition to contributing the sums necessary for NewBurbs to purchase the assets of the Debtor, the ownership group will fund the new operation with additional contributions of no less than $150,000.00, on the effective date of the Plan, and will make additional contributions, as needed to ensure that the operational expenses of NewBurbs, including payment on the Note, are met during the term of the Note.

Mr. Josh Henderson, a current insider of the Debtor, will serve as General Manager of NewBurbs pursuant to the terms of a Proposed Employment Agreement for which he will be

compensated a monthly salary of $15,000.00 for services rendered.    Josh Henderson will not be a member of the NewBurbs ownership group.

**ARTICLE IX**

**GENERAL PROVISIONS**

**9.01**    **Definitions and Rules of Construction**. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**9.02**    **Effective Date of Plan**.    The Effective Date of this Plan is the date of confirmation.

**9.03**    **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**9.04**    **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**9.05**    **Captions**.      The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**9.06**    **Controlling Effect**.    Unless a rule of law or procedure is supplied by federal law, including the Code or the Federal Rules of Bankruptcy Procedure), the law of the State of Washington governs this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE X**

**DISCHARGE**

**10.01**   Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a Discharge.

**10.02**. **Consensual Plan**   This Plan may be confirmed if it meets all provisions of 11 U.S.C. §1129(a) except for 11 U.S.C. §1129(a)(15), wherein the Plan is accepted by every class of claims and interests under the Plan.  In that event, the Court will grant a Discharge upon confirmation which will discharge the debtor from pre-confirmation debts pursuant to § 1141(d) of the Bankruptcy Code.

**10.03**.   **Cramdown Plan**   This Plan may also be confirmed without the consenting vote of every impaired class so long as it does not discriminate unfairly and is fair and equitable pursuant to 11 U.S.C. §1191(b).   Confirmation of a Cramdown Plan does not discharge any debt provided for in this Plan until the court grants a Discharge on completion of all payments under this Plan, which will discharge the debtor from pre-confirmation debts pursuant to § 1141(d) of the Bankruptcy Code.

**10.04**.   Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**ARTICLE XI**

**DISBURSING AGENT**

**11.01**.   If this Plan is confirmed as a Cramdown Plan or as a Consensual Plan, as described in Sections 10.02 and 10.03 herein, Neeleman Law Group, P.C. will serve as the Disbursing Agent.   Neeleman Law Group, P.C.  will be responsible for the filing of post-confirmation reports on behalf of the debtor, pursuant to Local Bankruptcy Rule 2015-1 until a

final decree is entered or the payments provided for in the Plan are completed. All payments will be held in the IOLTA account of Neeleman Law Group, P.C. If any payment in the form of certified funds is received prior to the 20th of each month, Neeleman Law Group, P.C. will make payments pursuant to the terms set forth in Article V of the Plan and payments will be disbursed no later than the end of the month in which the payment is received. Any payment received after the 20th of each month, will be disbursed no later than the end of the following month.

**11.02**. Neeleman Law Group, P.C., as the Disbursing Agent, is authorized to be compensated the sum of $200.00 per month, plus applicable postage, if available, for services rendered in acting as the disbursing agent for this Plan without further application to the Bankruptcy Court.

**11.03**. If for any reason, the Trustee acts as a Disbursing Agent and/or Plan Administrator in a cramdown plan, payments will disburse according to the terms set forth in 11.01 and the Trustee will be compensated at his regular and customary rate for himself and his staff, plus applicable postage, for services rendered in acting as the disbursing agent. For his services as Post-Confirmation Plan Disbursing Agent, the Trustee will be authorized to be paid any amount less than $500.00 per month upon 10 days' notice to Neeleman Law Group, P.C. as counsel for the estate, after which the Court may enter an order approving the fees without further notice and hearing. If the Trustee acts as a Disbursing Agent and/or Plan Administrator, Neeleman Law Group will still be responsible for filing post-confirmation reports as stated in section 11.01.

**11.04**. If the Debtor has not been declared in default pursuant to Article XIII and if the Debtor makes a partial Plan payment, to the extent funds are available, funds will be disbursed first to administrative claims, specifically payments to the Disbursing Agent and Trustee's fees,

then to claims in the following order: secured claims, administrative attorney's fees, priority claims, and unsecured claims. If funds are not available to make the payment in full pursuant to Article V, payments will be made on a prorated basis for each classification of claims. If funds are available, payments will be made in the order stated above and will be paid pursuant to Article V.

## **ARTICLE XII**

### **OTHER PROVISIONS**

**12.01**. In a Consensual Plan, on the Effective Date of the Plan, all property of the Debtor's estate will vest in the reorganized Debtors pursuant to 11 U.S.C. §1141(b), free and clear of all claims and interests, except that the lien of secured creditors shall be retained until all required payments to the creditors under the Plan are completed.

**12.02**. Creditors may not take any actions (including, without limitation, lawsuits or other legal actions, levies, attachments, or garnishments) to enforce or collect either pre-confirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan. Provided that the Debtor does not materially default under the Plan, creditors shall be prohibited from taking any enforcement or collection actions or any kind against the Debtor.

**12.03**. The Bankruptcy Court retains jurisdiction until all Plan payments have been made.

**12.04**. Any notices, requests, and demands required or permitted to be provided under the Plan, to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered or, in the case of notice by facsimile.

transmission, when received and telephonically confirmed, addressed as follows:

Neeleman Law Group
1403 8th Street
Marysville, WA 98270
Email: jneeleman@expresslaw.com
Telephone: (425) 212-4800
Facsimile: (425) 212-4802

Michael DeLeo
PRK Livengood
1850 Skyline Tower
10900 N.E. 4th Street
Bellevue, WA 98004
Email: mdeleo@prklaw.com
Telephone: (425) 462-4700
Facsimile: (425) 451-0714

**12.05**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**12.06**  **Modification of Plan**

The Debtor may modify the Plan at any time before confirmation of the Plan; however, the Court may require re-voting on the Plan.  The Debtor may modify the Plan after confirmation in accordance with the provisions stated in 11 U.S.C. §1193(b) if the Plan has been confirmed as a consensual plan, and under 11 U.S.C. §1193(c) if the plan has been confirmed as a non-consensual plan.

**ARTICLE XIII**

**DEFAULT**

**13.01**  If the Reorganized Debtor fails to make any payment to the Disbursing Agent which renders the Disbursing Agent unable to make payments under the Plan, or to perform any other obligation required under the Plan for more than fifteen (15) days after the time specified in the Plan, the affected creditor may serve upon Debtor and Trustee a written notice of default.

The Reorganized Debtor is in material default under the Plan if the debtor fails within thirty (30) days of the service of such notice of default (plus 3 days for mailing) to either: (i) to cure the default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.   If the Reorganized Debtor remains in material default after the time specified above, creditors may proceed with the remedies as specified below.

**13.02   Priority Claims**. If the Reorganized Debtor fails to make a payment on account of an ALLOWED PRIORITY CLAIM, the holder of such CLAIM shall be entitled to bring an action against the Reorganized Debtor in a court of competent jurisdiction, provided that at least 30-days' notice of intent to bring such action is first given to the Reorganized Debtor, and its undersigned counsel.   Alternatively, if, after 30 days written notice, a default remains uncured, the holder of the ALLOWED PRIORITY CLAIM shall be entitled to recover all amounts due and to become due to it under the PLAN by pursing all remedies, including administrative or judicial, as allowed by state law.

**13.03   Secured Claims**.  If the Reorganized Debtor fails to make a payment to the holder of  an ALLOWED SECURED CLAIM,  the holder of such CLAIM shall be entitled to proceed in accordance with the underlying agreement or agreements between the CLAIMANT and the Reorganized Debtor, provided that at least 30-days' notice of  intent to take such action is first given to the Reorganized Debtor and its undersigned counsel and the default remains uncured and in the absence of an order prohibiting the holder of the ALLOWED SECURED CLAIM from proceeding with its contractual rights.

**13.04   Unsecured Claims.**  If the Reorganized Debtor fails to make a payment on account of an ALLOWED UNSECURED CLAIM in CLASS 3, the holder of such CLAIM shall be entitled to bring an action against the Reorganized Debtor in a court of competent jurisdiction,

provided that at least 30-days' notice of intent to bring such action is first given to the Reorganized Debtor, the Trustee, and its undersigned counsel and the default remains un cured. . If such an action is commenced, after default and notice, the holder of the ALLOWED CLAIM shall be entitled to recover all amounts due and to become due to it under the PLAN.

     **13.05** **<u>Additional Default Remedies</u>**.  If the Plan is confirmed as a Cramdown Plan under 11 U.S.C. § 1191(b) and Debtor defaults on the Plan payment and subsequently fails to cure after the written 30 days' notice as referenced above, Debtor will liquidate non-exempt assets to protect the holders of claims or interests.  If the Debtor fails to liquidate its assets within 60 days from the date of the notice of default, any party in interest may move to convert or dismiss the case or exercise any other remedy available.  If the Plan is confirmed consensually under 11 U.S.C. § 1191(a), and the case has closed, any party may move for an order reopening the case and authorizing reappointment of a Trustee pursuant to 11 U.S.C. §§ 1183(c)(1) and 1185.  Upon reopening of the case, the assets shall re-vest in the Chapter 11 Estate and a Trustee will be reappointed.  After reappointment of a Trustee in the reopened case, may convert the case to a Chapter 7 for an orderly liquidation of Debtor's assets or may exercise any other remedy available.

     In addition, or in the alternative to the other remedies for default previously set forth above, a creditor or party in interest, including the Trustee, may bring a motion to convert or dismiss the case under 11 U.S.C. § 1112(b), after the PLAN is confirmed, if there is a material default in performing the PLAN, or if there are other grounds for finding cause to convert or dismiss under 11 U.S.C. § 1112(b).

**13.06** The Disbursing Agent will make their record of receipts/disbursements available to any party, as requested. A creditor may notify the Disbursing Agent of any alleged plan default and shall give notice of such claimed default to all parties in interest.

## ARTICLE XIV

### CONFIRMATION REQUIREMENTS AND PROCEDURES

**14.01** To be confirmable, a Consensual Plan must meet the requirements listed in 11 U.S.C. § 1129(a) not including the contribution of all disposable income requirement of 11 U.S.C § 1129(a)15 of the Bankruptcy Code. These include the requirements that: (1) the Plan must be proposed in good faith (11 U.S.C. §1129(3));  (2) every impaired class has voted to accept the Plan, without counting votes of insiders (11 U.S.C. §1129(8)); and (3) the Plan must be feasible.

**14.02** To be confirmable, a Cramdown Plan must be fair and equitable and meet the requirements listed in 11 U.S.C. §1129(a) but does not require that every class of claims and interest has accepted the plan (11 U.S.C. §1129(a)(8)) nor that at least one impaired class has accepted the Plan (11 U.S.C 1129(a)(10)), A Cramdown Plan also requires that the Debtor contribute all disposable income to the Plan during the Plan term and that the Plan payment be not less than the net disposable income of the Debtor (11 U.S.C §1191(c)).

**14.03**. **Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or

equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

The Debtor believes that classes 1, 2 and 3 are impaired and that holders of claims in those classes are therefore entitled to vote to accept or reject the Plan.

          1.     *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim was December 15, 2023***

          2.     *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan. As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

          3.     *Who is **Not** Entitled to Vote*

The holders of the following six types of claims and equity interests are *not* entitled to vote:

a. holders of claims and equity interests that have been disallowed by an order of the Court,

b. holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above) unless they have been "allowed" for voting purposes.

c. holders of claims or equity interests in unimpaired classes.

d. holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

e. holders of claims or equity interests in classes that do not receive or retain any value under the Plan.

f. holders of administrative expense claims.

***EVEN IF YOU ARE NOT ENTITLED TO VOTE ON THE PLAN,***

***YOU HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.***

*4. Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity and should cast one ballot for each claim.

**14.04**. **Votes Necessary to Confirm the Plan**

To confirm a Consensual Plan all impaired classes must have voted to accept the Plan., If all impaired classes have not voted to accept the Plan, a plan may still be confirmed by a cram down of non-accepting classes, as discussed later in Section 14.04 [2].

1. *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

5. *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm a Cramdown Plan if the Plan meets the requirements referenced in Section 14.02 above. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except for those requirements referenced in Section 14.02 above does not discriminate unfairly and is fair and equitable toward each impaired class that has not voted to accept the Plan (11 U.S.C. §1191(b)).

***YOU SHOULD CONSULT YOUR OWN ATTORNEY IF A CRAMDOWN CONFIRMATION WILL AFFECT YOUR CLAIM OR EQUITY INTEREST, AS THE VARIATIONS ON THIS GENERAL RULE ARE NUMEROUS AND COMPLEX.***

**14.05 <u>Liquidation Analysis</u>**

To confirm the Plan, the Court must find that all creditors and equity interest holders **who do not accept the Plan** will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached as **Exhibit B**.

Case 23-11919-MLB    Doc 55    Filed 01/08/24    Ent. 01/08/24 23:34:39    Pg. 23 of 25

**14.06**. <u>**Feasibility**</u>

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan. The Debtor's projections attached hereto support that this proposed plan is feasible and will not result in liquidation of assets or further reorganization.

    1.     *Ability to Initially Fund Plan*

The Debtor anticipates having sufficient funds on hand to begin making payments no later than 60 days following the effective date.

    2.     *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Debtor projects that it will have a sufficient income stream from operations to make the proposed to complete the Plan. The Debtor's projections attached hereto support that this proposed plan is feasible and will not result in liquidation of assets or further reorganization.

***YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING***
***TO ALL REPRESENTATIONS AND PROJECTIONS CONTAINED HEREIN.***

Dated this 8th day of January 2024

Respectfully submitted,

/s/ Joshua Henderson
By Joshua Henderson – Managing Member
HWC Burb's Burgers, LLC
Debtor-in-possession

NEELEMAN LAW GROUP, P.C.

/s/ Thomas D. Neeleman
Attorney for Debtor-in-Possession